UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROADGATE, INC.,

      Plaintiff,

v.

SECRETARY,
DEPARTMENT OF LABOR,

      Defendant.

Case No. 22-11593
Honorable Laurie J. Michelson

---

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17]
AND GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [16] [18]**

---

Following an investigation, an official at the Department of Labor concluded that Broadgate, Inc. willfully violated the Immigration and Nationality Act's requirements for the H-1B visa program. This official sent Broadgate a "determination letter" notifying it of her conclusion and imposing certain remedies. Broadgate appealed to an administrative law judge and the Department's administrative review board, arguing that: (1) the Department official who issued the determination letter failed to prove that she had the authority to do so and (2) the Department's investigation of Broadgate was overly broad, violating federal regulations.

Both arguments were ultimately rejected by the administrative review board, so Broadgate now asks this Court for review. And it wants a decision quickly to prevent its pending H-1B petitions from being denied on October 1, 2022, as required

by the determination letter. Accordingly, the Court entered an expedited scheduling order for cross-motions for summary judgment, which are now before the Court.

For the following reasons, the Court will DENY Broadgate's motion for summary judgment and GRANT the Secretary's motion for summary judgment.

## I. Background

Before proceeding to the facts, a brief explanation of the Immigration and Nationality Act is in order.

### A. Legal Framework

The INA permits employers to temporarily hire non-immigrant workers in "specialty occupations" under the H-1B visa program. *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1182(n)(4)(c). But employers seeking to participate in the H-1B program must first file a "Labor Condition Application" with the Department of Labor, promising to abide by certain labor standards and to follow certain procedures. 8 U.S.C. § 1182(n)(1).

Three Labor Condition Application requirements are relevant here. First, in the Application, the employer must commit to paying the H-1B worker "the greater of the actual wage rate . . . or the prevailing wage." *See* 8 U.S.C. § 1182(n)(1)(C); 20 C.F.R. § 655.731. Second—and perhaps most importantly here—the employer must post notices of the Application "in at least two conspicuous locations at each place of employment where any H-1B nonimmigrant will be employed." 20 C.F.R. § 655.734. As one court recognized, the "Notice Requirements are designed to protect American workers from displacement by H-1B workers." *See Camo Techs., Inc. v. Solis*, No. 12-

2

CV-6050-WJM-MF, 2013 WL 5719249, at *1 (D.N.J. Oct. 18, 2013). To that end, the notices must provide particular information about the H-1B workers sought, their wages, and the locations where they will work, in addition to providing information about filing complaints with the Department. *See* 20 C.F.R. § 655.734(a)(1)(ii). Third, the employer must promise to make certain documents available to the public, including documentation of the H-1B worker's wages and documents showing that the employer satisfied the Notice Requirements at each location where an H-1B worker is employed. *See* 20 C.F.R. § 655.760(2), (5).

To ensure that employment needs are promptly met—and so long as the Department does not find that it is "incomplete or obviously inaccurate"—the Department must certify an Application within seven days of receipt. 8 U.S.C. § 1182(n)(1). From there, the employer must submit an "H-1B petition" and the certified Application to the Department of Homeland Security. 20 C.F.R. § 655.705(b). Upon DHS approval, the Department of State then issues the H-1B visa to the nonimmigrant worker. *Id.*

But the responsibility for "investigating and determining an employer's . . . failure to comply with [its Labor Condition Application]" remains with the Department of Labor. *See* 20 C.F.R. § 655.705(a)(2). Accordingly, the INA and its implementing regulations detail the procedures for filing complaints, initiating investigations, issuing determination letters, imposing penalties, and seeking appeals. *See* 8 U.S.C. § 1182(n)(2); 20 C.F.R. § 655.800 *et seq*. Specifically, an aggrieved (or non-aggrieved) party may submit complaints to the Department's Wage

and Hour Division. *See* 20 C.F.R. §§ 655.806–807. Then the Administrator of the WHD "shall" investigate if there is "reasonable cause" to believe that an employer failed to meet a condition of its Application. 8 U.S.C. § 1182(n)(2)(A); 20 C.F.R. § 655.800. Following an investigation, the Administrator (or a redelegated subordinate) issues a "determination letter" to the employer setting forth the investigation's conclusions and any remedies sought. §§ 655.806, 816; Secretary's Order No. 01-2014, 79 Fed. Reg. 77,527 (Dec. 24, 2014) (available at 2014 WL 7275751). And if the Administrator finds "willful" violations of the INA, remedies include civil monetary penalties and "debarment" from the H-1B visa program, a remedy where the Department of Labor informs the Department of Homeland Security that it should not approve immigrant or non-immigrant petitions from that employer for a set period of time. *See* 20 C.F.R. §§ 655.810(b), (d).

After the Administrator issues a determination letter, the employer can challenge it at an evidentiary hearing before an administrative law judge (ALJ); the ALJ's decision can be further appealed to the Labor Department's administrative review board. §§ 655.820, 835, 845. The Secretary of Labor has discretion to review the Board's decisions, but if he or she does not do so, the Board's decision becomes the final decision of the Secretary. *See* Secretary's Order No. 01-2020, 85 Fed. Reg. 13186-01 (March 6, 2020) (available at 2020 WL 1065013). The Secretary's final decision is, in turn, subject to judicial review. *See* 5 U.S.C. § 704.

## B. Factual and Procedural Background

Broadgate is a "global IT consulting company" which places IT workers in businesses all over the United States. (ECF No. 16-4, PageID.1433.) As part of that work, Broadgate regularly employs H-1B visa-holders. (*Id.*) Indeed, Broadgate currently has nine H-1B petitions pending before the Department of Homeland Security. (ECF No. 5, PageID.207.)

In February 2018, a former Broadgate employee (and H-1B visa-holder) filed a complaint with the Department's Wage and Hour Division alleging that Broadgate failed to pay him the wages required by the Application, which as explained is the higher of the actual or the prevailing wage. (ECF No. 16-4, PageID.1433; ECF No. 16-9, PageID.1495.) After determining that there was reasonable cause to investigate (ECF No. 16-9, PageID.1504), a WHD investigator interviewed and collected "many megabytes" of documents from the aggrieved party (ECF No. 16-2, PageID.1091). In time, the investigator requested public-access documents from Broadgate to determine what wages the former employee was due. (ECF No. 16-2, PageID.1093–1098; ECF No. 6-1, PageID.302–303.) After receiving those documents, he found that the actual wage documentation was incomplete and that the prevailing wage documentation was missing entirely. (ECF No. 16-2, PageID.1104.) And he found that the file lacked documentation showing that Broadgate satisfied the Notice Requirements at each location where it employed an H-1B worker; there was only "a document of notice at Broadgate's office." (ECF No. 16-2, PageID.1104–1105.)

So in December 2018, the Detroit District Director (a subordinate of the Administrator) issued a determination letter concluding that Broadgate failed to pay the aggrieved party his legally required wages, failed to make its Application and other documents available for inspection, and failed to maintain other required documentation. (ECF No. 6-1, PageID.307–310.) But most importantly here, the District Director also found that Broadgate "willfully and substantially" failed to post notices of the filing of Labor Condition Applications on at least 14 occasions. (*Id.* at PageID.311.) For this violation, the District Director assessed about $70,000 in civil penalties and imposed a two-year debarment. (*Id.*)

In time, Broadgate appealed to an ALJ and stipulated to challenge only the failure-to-post violation and associated remedies. (ECF No. 6-1, PageID.273.) In August 2019, the ALJ concluded that Broadgate had willfully violated the notice requirements. (*Id.* at PageID.247–251.) But he also concluded that the determination letter was invalid and unenforceable. (*Id.* at PageID.271, 277.) Specifically, he held that the letter was invalid because the District Director failed to prove that she had the delegated authority from the Secretary or redelegated authority from the WHD Administrator to issue it. (*Id.*) In reaching that conclusion, the ALJ rejected the Administrator's argument that the "presumption of regularity" placed the "burden of proof" of that issue on Broadgate. (*Id.* at PageID.268–271, 276.) Accordingly, the ALJ vacated the remedies. (*Id.* at PageID.277.)

But that was just the beginning of this case's tortured procedural history. Following the ALJ's reversal, the Administrator appealed to the Department's

administrative review board. And in April 2021, the Board reversed the ALJ and remanded the case. (ECF No. 6-1, PageID.325–332 (also available at 2021 WL 1886273).) The Board's decision provided a historical background of the presumption of regularity and concluded that "if the law imposes a relevant, official duty on an official, we presume that the official has been properly appointed to that position and performed that duty, unless there is evidence to the contrary." (*Id.* at PageID.324.) Accordingly, the Board placed the "burden of proof" as to the District Director's authority to issue the determination letter on Broadgate, and it concluded that Broadgate failed to produce "any evidence" that the District Director lacked such authority. (*Id.* at PageID.330.) So it remanded the case back to the ALJ "to analyze the remedies" for Broadgate's failure-to-post violation. (*Id.* at PageID.330.)

While the ALJ's decision on remand was pending, Broadgate filed a complaint in this Court challenging the Board's decision. *See Broadgate v. Dep't of Labor Sec'y*, No. 21-12093 (E.D. Mich. Sept. 8, 2021). But a few months later, it voluntarily dismissed that case. (*See id.* at ECF No. 8.)

The ALJ issued his decision on remand in October 2021. (ECF No. 6-1, PageID.333.) The ALJ affirmed his prior holding that Broadgate had willfully failed to post notices on 14 occasions. (*See id.* at PageID.336–337.) And since the Board had already decided that the District Director had authority to issue the determination letter, he upheld the debarment but, for reasons not relevant here, he reduced the civil monetary penalty to about $60,000. (*Id.* at PageID.339.)

Broadgate again appealed to the administrative review board, arguing that its violations of the INA were not willful and that the Department's investigation was overbroad. (ECF No. 6-1, PageID.223.) In May 2022, the Board rejected those arguments and affirmed the ALJ. As to the first argument, it "agree[d] with the ALJ that [Broadgate] willfully and substantially failed to provide notice of the filing of [Applications] on fourteen occasions. [Broadgate] was repeatedly warned by its attorneys that it was required to post notices . . . [and] its representative testified that [Broadgate] was aware of the notice requirements[.]" (*Id.* at PageID.228–229.) As to the second, it concluded that the scope of the investigation was "reasonable and permissible." (*Id.* at PageID.222.) It explained: "The WHD investigator deemed that it was necessary to procure the public access files . . . to determine whether any wages were owed. The WHD investigator testified that . . . public access documents tend to reflect H-1B workers' worksites and wage rates more accurately than [Applications]. Moreover, these public access files were already available to the public[.]" (*Id.*) The Secretary did not exercise discretionary review, and the decision soon became final.

Having reached a final decision as to the violations, the Department sought to enforce its remedies. On June 10, 2022, the Department of Labor advised the Department of Homeland Security that it should not approve any new immigrant or non-immigrant visa applications from Broadgate until June 20, 2024. (*See* ECF No. 6-1, PageID.391.) And on June 28, it advised Broadgate that the $59,752 civil monetary penalty was "due immediately." (ECF No. 14-1, PageID.445.)

8

On July 13, Broadgate turned to the federal district court for a second time, seeking review of both Board decisions. (*See* ECF No. 1.) Broadgate also sought a preliminary injunction to "postpone the effectiveness of the [Department's] decision." (ECF No. 5.) It argued that the denial of its nine pending H-1B visa petitions would cost it "at least $90,000 net profits annually as well as an inestimable loss of goodwill with its clients[,] and [it would] severely hinder its ability to recruit new employees in the future." (*Id.* at PageID.207.) The case was reassigned to this Court, which held a status conference in short order. (ECF No. 9.) Following that conference, the parties stipulated to dismiss the preliminary injunction motion, and the Court entered an expedited briefing schedule for cross-motions for summary judgment. (*See* ECF Nos. 11, 13.) And around that time, the Secretary filed a counterclaim under the Federal Debt Collection Procedures Act, seeking the $59,752 in civil monetary penalties plus interest. (ECF No. 14, PageID.437.)

The cross-motions for summary judgment are now fully briefed. (*See* ECF Nos. 16, 18-1 (Broadgate's "corrected" motion for summary judgment), 19, 20.) Given the substantial briefing, lengthy administrative record, and request for expedited ruling, the Court considers the motions without further argument. *See* E.D. Mich. LR 7.1(f).

## II. Legal Standard

This Court has jurisdiction over the cross-motions for summary judgment seeking review of the Secretary's decision pursuant to the Administrative Procedures Act. *See* 5 U.S.C. § 704 (noting that "final agency actions" are subject to judicial review). Specifically, the Court will uphold the Secretary's decision if it "is supported

by substantial evidence," and if the decision is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Kutty v. U.S. Dep't of Lab.*, 764 F.3d 540, 546 (6th Cir. 2014) (citing 5 U.S.C. § 706(2)(A)). To satisfy the substantial evidence standard, the decision must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *ITT Auto. v. NLRB*, 188 F.3d 375, 384 (6th Cir. 1999)). A decision is not arbitrary or capricious "when it is possible to offer a reasoned, evidence-based explanation for a particular outcome." *Id.* (quoting *R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 548 (6th Cir. 2002) (citations omitted)).

And the Court reviews the Secretary's motion for summary judgment related to the Federal Debt Collection Procedures Act counterclaim pursuant to Federal Rule of Civil Procedure 56. Under that rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." But here, because the Secretary would "bear the burden of persuasion at trial" on this claim, his "initial summary judgment burden is 'higher in that [he] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).

### III. Analysis

Three issues are now before the Court: (1) whether the Board's decision to place the "burden of proof" on Broadgate as to the District Director's authority to issue the determination letter was arbitrary and capricious; (2) whether the Board's conclusion that the Department's investigation was "reasonable and permissible" was arbitrary and capricious; and (3) whether the Department is entitled to the civil monetary penalty under the Federal Debt Collection Procedures Act.

The Court will take each issue in turn.

### A. The District Director's Authority

The dispute here is narrow and somewhat technical. But on this much, both parties agree: the INA gives the Secretary of Labor the power to investigate an employer's failure to comply with its Labor Condition Applications. (ECF No. 16, PageID.1042; ECF No. 18-1, PageID.1833); *see also* 8 U.S.C. § 1182(n)(2). And they agree that the Secretary delegated this authority to the Administrator of the Wage and Hour Division and explicitly granted the Administrator the power to redelegate it. *See* 20 C.F.R. § 655.806; Secretary's Order No. 01-2014, 79 Fed. Reg. 77,527 (Dec. 24, 2014) (available at 2014 WL 7275751). Accordingly, as the Board explained, "so long as an individual is designated to perform a duty assigned to the Administrator . . . the individual has the legal authority to perform such duty." (ECF No. 6-1, PageID.321.) Broadgate apparently concedes that the Detroit District Director could be such an individual if authority was redelegated to her. (*See* ECF Nos. 18-1, 20.) So the question is whether the Administrator actually did so.

11

But the parties ask the Court to resolve a more precise question: who bore the "burden of proof" as to whether the District Director had authority to issue the determination letter. The somewhat unusual nature of this question arises from the administrative record, as neither party produced evidence on this point.[1] (ECF No. 6-1, PageID.256, 276.) So whichever party bore the burden necessarily failed to meet it. In other words, if the Administrator bore the "burden of proof," then the Court should set the determination letter aside. If Broadgate bore the "burden of proof," then the determination letter and its remedies stand.

When making this determination, the Board applied the "presumption of regularity" and placed the "burden of proof" on Broadgate. (ECF No. 6-1, PageID.329.) The Court finds that this decision was in accordance with law and not arbitrary and capricious.

Start with the presumption of regularity. At its most general level, the presumption of regularity "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Parra-Morela v. Holder*, 504 F. App'x 461, 462 (6th Cir. 2012) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)); *see also U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001).

---

[1] In fairness, the Secretary produced some evidence to this Court, but it is not in the administrative record. (*See* ECF Nos. 16-11, 16-12.) So the Court declines to consider it. *See Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 657 (6th Cir. 2018) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

While that principle is fairly straightforward, the presumption "does not possess a cohesive doctrinal structure," and courts have applied it in as many as 14 distinct scenarios. *See* Aram A. Gavoor and Steven A. Platt, *A History, Taxonomy and Qualified Defense of the Presumption of Regularity*, Lawfare (Oct. 6, 2021, 10:53 AM), https://perma.cc/Y9SP-ZXUQ (previewing forthcoming article in the Fla. L. Rev.); *see also The Presumption of Regularity in Judicial Review of the Executive Branch*, 131 Harv. L. Rev. 2431 (2018). Fortunately, the presumption's application here—as a rule of evidence—is one of its most common and clearly defined. As one commenter explained, courts since the founding era have applied the presumption "to bridge a gap in direct evidence about a technicality." *Id.*

In this application, the presumption directs that "[a]cts done by a public officer 'which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.'" *R.H. Stearns Co. v. United States*, 291 U.S. 54, 63 (1934) (quoting *Bank of U.S. v. Dandridge*, 25 U.S. 64, 70 (1827)); *see also N.L.R.B. v. New Vista Nursing & Rehab.*, 719 F.3d 203, 214 (3d Cir. 2013). That is, if a public officer takes an action, it is presumed that she had authority to take that action. Here, the District Director issued a determination letter that presupposed that she had the authority to do so. So issuing the letter creates a presumption that she did.

This conclusion breaks no new ground, as several federal appellate courts have applied the presumption of regularity in this manner. In *Coreas v. Holder*, the Fourth Circuit presumed that a Department of Homeland Security "group supervisor" was authorized to issue a notice to appear to the plaintiff (thus initiating removal

proceedings against him in immigration court), despite no evidence showing that the official had been delegated such authority under the relevant regulations. 526 F. App'x 322, 326 (4th Cir. 2013). Similarly, in *Kohli v. Gonzales*, the Ninth Circuit presumed that an official who illegibly signed the plaintiff's notice to appear was authorized to issue it, despite not knowing who that official was and, by extension, not knowing if the official had been delegated authority to issue it. 473 F.3d 1061, 1068 (9th Cir. 2007). And finally, in *Borg-Warner Corp. v. Commission of Internal Revenue*, the Seventh Circuit presumed that an IRS official had authority to terminate his office's case against a taxpayer after sending him a letter to that effect, despite no evidence showing that the official had been delegated the authority to do so. 660 F.2d 324, 330 (7th Cir. 1981). Likewise, the Board was correct to presume that the District Director had authority to issue the determination letter, despite no evidence showing that she had been redelegated the authority to do so.

But this does not necessarily end the inquiry, as the presumption of regularity is rebuttable. As the Supreme Court has explained, "[h]owever the rule is characterized, where the presumption is applicable, clear evidence is usually required to displace it." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see also United States v. Martin*, 438 F.3d 621, 634 (6th Cir. 2006). Take, for example, *Romero v. Tran*, 33 Vet. App. 252 (2021). In that case, the court applied a slightly different version of the presumption of regularity to presume that an agency sent a letter to a disability-benefits claimant as required by law. *Id.* at 259. But the claimant rebutted the presumption with "substantial evidence . . . that reflects a widespread

14

problem with [the agency] not mailing correspondence." *Id.* at 262–67. After the presumption was defeated, the "burden shift[ed] to the Secretary to establish that the [letter] was mailed as required by statute . . . or that [the claimant's] representative actually received [it]." *Id.* at 267.

This case is nothing like *Romero*. Unlike in that case, Broadgate produced no evidence to rebut the presumption that the District Director had been redelegated the authority to issue the determination letter. Accordingly, the presumption stands, and the Secretary need not produce evidence to show that the District Director was actually redelegated authority to issue the letter.

In sum, the Board was not arbitrary and capricious in "presum[ing] that [the District Director] properly discharged [her] official duties." *See Parra-Morela v. Holder*, 504 F. App'x 461, 462 (6th Cir. 2012). And because Broadgate presented no evidence to the contrary, the presumption survived, and the Secretary was not required to produce evidence of redelegation. *See id.*

Broadgate makes a number of arguments to the contrary, but none persuade. Broadgate's primary argument is that applying the presumption in this case violates the APA by impermissibly shifting the "burden of proof." (ECF No. 18-1, PageID.1841.) As the Court will explain, it does not.

Section 7(c) of the APA reads "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." *See* 5 U.S.C. § 556(d). In this case, the Administrator is the proponent of the enforcement action against Broadgate,

so it has the "burden of proof." So, at least in Broadgate's view, the Administrator has the burden of proof "as to all issues."[2] (*See* ECF No. 18-1, PageID.1845.)

Broadgate misunderstands § 7(c). As the Supreme Court has explained, "[f]or many years the term 'burden of proof' was ambiguous because the term was used to describe two distinct concepts." *See Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 276 (1994). The first is the "burden of persuasion," which it defined as "the obligation which rests on one of the parties to an action to persuade the trier of the facts . . . of the truth of a proposition which he has affirmatively asserted by the pleadings." *Id.* at 275. The second is the "burden of production" or "a party's obligation to come forward with evidence to support its claim." *Id.* at 272. With that distinction in place, the Supreme Court concluded that "the drafters of the APA used the term 'burden of proof' [in § 7(c)] to mean the burden of persuasion." *Id.* at 275. So the "proponent of the rule or order" must bear the burden of persuasion.

What about the burden of production? Since *Greenwich Collieries,* many courts—including the Sixth Circuit—have clarified that the APA permits shifting the burden of production to the party opposing the rule or order. *See Glen Coal Co. v. Seals*, 147 F.3d 502, 512–13 (6th Cir. 1998) ("[W]e find the *Doris Coal* presumption to be valid under *Greenwich Collieries* because it reallocates only the burden of

---

[2] Broadgate also takes aim at the "except as otherwise provided by statute" clause (*see, e.g.,* ECF No. 20, PageID.1881–1885), but neither the Board nor the Secretary suggested that the presumption of regularity implicates this clause. Rather, they believe that the presumption does not impermissibly shift the "burden of proof." (*See, e.g.*, ECF No. 19, PageID.1862.)

production, and not the ultimate burden of proof."); *see also Garvey v. Nat'l Transp. Safety Bd.*, 190 F.3d 571, 580 (D.C. Cir. 1999) ("[E]very Circuit that has considered the issue since [*Greenwich Collieries*] has concluded that a presumption that shifts only the burden of production does not shift the 'burden of proof' as that phrase is used in the APA."). For example, in *Glen Coal*, the Sixth Circuit permitted the Department to use a presumption where, if a claimant first proves that he is "totally disabled," the claimant is "entitled to a presumption . . . that the medical bills he presents are related to his [disability], thus making the employer/carrier liable. The employer/carrier must then come forward with evidence to rebut this presumption[.]" 147 F.3d at 511–12. The court found this presumption "to be valid under [§ 7(c) because it reallocates only the burden of production, and not the ultimate burden of proof." *Id.* at 512–13;

Putting this all together, the Administrator (as the proponent of the enforcement action) must bear the burden of persuasion, as the Secretary acknowledges. (ECF No. 16, PageID.1053.) But either the Administrator or Broadgate could bear the burden of production. So Broadgate's argument that § 7(c) places *both* burdens "as to all issues" on the Secretary is incorrect. (*See* ECF No. 18-1, PageID.1845.)

Although Broadgate's argument goes too far, it does raise a question that must be answered: did the presumption of regularity shift the burden of persuasion (which is forbidden) or the burden of production (which is permitted)? While the Court cannot speak to every variation of the presumption, its role here is as a rule of evidence that

shifts only the burden of production. *See*, *e.g.*, *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 759 (2005) ('[T]he Supreme Court understood the presumption of regularity to be a[n] . . . evidentiary presumption[.]"); Fed. R. Evid. 301 ("[T]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."). Indeed, the Supreme Court "has long recognized that a presumption properly used refers only to a device for allocating the production burden." *See Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1966 (2021) (Gorsuch, J., concurring in part).

This disposes of a number of Broadgate's arguments. Two remain.

First, Broadgate makes a related and somewhat convoluted argument that the District Director's authority was an "express element" of the Department's enforcement action. (ECF No. 20, PageID.1875.) This argument again misunderstands the work the presumption does. "Presumptions are evidentiary devices that enable a factfinder to presume the existence of an 'ultimate' or 'elemental' fact upon proof of 'evidentiary' or 'basic' facts." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *County Court of Ulster v. Allen*, 442 U.S. 140, 156 (1979)). So even assuming the District Director's authority was an "express element" of the enforcement action, the Board was entitled to presume the existence of the "elemental" fact of the District Director's authority based on the "basic" fact of her issuing the determination letter. And then it became Broadgate's burden to produce evidence to the contrary.

18

Second, Broadgate says that *American Vanguard Corp. v. Jackson* demands a different result here. (*See* ECF No. 18-1, PageID.1838–1840 (citing 803 F. Supp. 2d 8 (D.D.C. 2011)).) In that case, the Director of the EPA's Waste and Chemical Enforcement Division ordered the plaintiff to stop the sale of a certain pesticide. *Id.* at 10. The problem was that the authority to issue the stop-sale order had been unambiguously delegated to another official, the Director of the Toxics and Pesticides Enforcement Division. *Id.* at 13. So the court concluded that the stop-sale order by the waste-division director was "illegally issued," vacated it, and remanded the case to the EPA. *Id.* at 15.

This case does not change the outcome here. First, Broadgate clings to this language: "a court may uphold agency action only where the record establishes that the official who took such action was authorized to do so." (ECF No. 18-1, PageID.1838 (citing *id.* at 12).) The district judge was certainly correct that courts should not uphold agency action where the record establishes that the official who took such action *affirmatively lacked* the authority to do so, as was the case there. But there is no such evidence here. And unlike *American Vanguard*, Broadgate did not argue that the Administrator had delegated his authority to someone else or that he was otherwise forbidden from redelegating his authority to the District Director. (*See* ECF Nos. 18-1, 20.) The only question here is if the Administrator actually redelegated authority and whether the Administrator was required to produce evidence of it. As explained, the presumption of regularity exists to answer that question. So to the

extent that statement from *American Vanguard* sweeps more broadly than its facts, the Court does not find it persuasive.

And though *American Vanguard* was silent as to the presumption of regularity, its application would not necessarily have changed the result in that case, as Broadgate suggests. Broadgate says that, had the presumption of regularity applied, the judge "would have relied upon [it] to presume that the [toxics-division director] delegated his authority to issue these orders to the officer who actually made the decision. Plainly [the court] did not[.]" (ECF No. 18-1, PageID.1839–1840.) But that misapplies the presumption. The court would only have presumed that the waste-division director had been properly delegated the authority to issue the stop-sale order. *See R.H. Stearns Co. v. United States*, 291 U.S. 54, 63 (1934). At that point, the court would have examined American Vanguard's evidence that the toxics-division director actually possessed such authority—and that evidence may well have overcome the presumption. So again, it is not clear that *American Vanguard* would have been decided differently if the presumption had been considered. And in any case, as Broadgate recognizes, "questions which lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (ECF No. 20, PageID.1878–1879 (quoting *Cooper Indus. v. Aviall Servs.*, 543 U.S. 157, 170 (2004)).)

In conclusion, the Board's decision to apply the presumption of regularity and place the burden of producing evidence as to the District Director's authority on

Broadgate was not arbitrary and capricious, was not contrary to law, and did not violate § 7(c) of the APA.

## B. Scope of Investigation

Broadgate next asks the Court to reverse the Secretary because its investigation was "an unlawful fishing expedition that happened to get lucky and reeled in a much bigger, and entirely different, fish from the one who the agency purportedly set out to catch." (ECF No. 20, PageID.1891.)

The Board concluded that the investigation was "reasonable and permissible." It stated, "the record does not reflect that the WHD conducted a fishing expedition to uncover any and all violations [Broadgate] committed." (ECF No. 6-1, PageID.232.) Specifically, it found: "In this case, the H-1B visa complainant alleged that he was not paid the higher of the prevailing or 'actual wage.' The WHD investigator deemed that it was necessary to procure the public access files to analyze wage information for the H-1B visa worker and other comparable employees to determine whether any wages were owed. The WHD investigator testified that, based on his experience, public access documents tend to reflect H-1B workers' worksites and wage rates more accurately than [the employer's Application]." (*Id.*)

There is substantial evidence to support that conclusion, and it was not arbitrary and capricious. The INA's regulations direct that "[t]he Administrator, either pursuant to a complaint or otherwise, shall conduct such investigations as may be appropriate and, in connection therewith, enter and inspect such places and such records (and make transcriptions or copies thereof), question such persons and gather

such information as deemed necessary by the Administrator to determine compliance regarding the matters which are the subject of the investigation." *See* 20 C.F.R. § 655.800(b).

To be sure, this "does not grant the Secretary unlimited discretion to . . . authorize the comprehensive initial investigation of the employer and its general compliance" with every part of the regulatory scheme. *Greater Missouri Med. Pro-Care Providers, Inc. v. Perez*, 812 F.3d 1132, 1139 (8th Cir. 2015). But the regulations give the Department "broad discretion to gather the information that it 'deem[s] necessary' to determine an employer's 'compliance regarding the matters which are the subject of the investigation.'" *Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 235 (2d Cir. 2020). Accordingly, "where a complaint gives the Secretary 'reasonable cause to believe' that an employer has failed to meet its obligations under the H-1B Program . . . 8 U.S.C. § 1182(n)(2)(A) and 20 C.F.R. § 655.800(b) permit the agency to investigate the full scope of that potential failure, including victims and circumstances that were not the subject of any specific allegation." *Id.*

Given this standard, the investigation was appropriate. As explained, in February 2018, a former Broadgate H-1B worker filed a complaint with the Wage and Hour Division. (ECF No. 16-9, PageID.1495.) The aggrieved party checked the box stating: "Employer failed to pay nonimmigrant worker(s) the higher of the prevailing or actual wage." (*Id.* at 1496.) And after speaking with the aggrieved party and determining that there was reasonable cause to investigate, the investigator set out to determine what (if anything) he was owed. *See* 8 U.S.C. § 1182(n)(1)(C). As the

22

investigator explained, he requested the public-access files because they should contain documents relevant to calculating the actual and prevailing wage rates. (ECF No. 16-2, PageID.1093–1097.) In other words, the investigator sought the public-access documents to uncover "the full scope of that potential failure" to comply with the INA's wage requirement. *See Aleutian*, 975 F.3d at 235. And once he received the public-access files, he found that "there was only documentation of notice at Broadgate's office," and not for the locations where Broadgate placed H-1B workers. (ECF No. 6-1, PageID.292.) So there is substantial evidence to support the Board's conclusion that the investigation was proper. And nothing Broadgate argues alters that conclusion.

Indeed, Broadgate's first argument that the WHD investigation was overbroad relies almost exclusively on a mischaracterization of the investigator's testimony. Broadgate argues that the Board credited the investigator's "*post hoc* rationalizations" for requesting the public access records and that the records were "absolutely unnecessary to the investigation of his complaint." (ECF No. 20, PageID.1889.) As just explained, and as the Board concluded, the investigator testified that he needed the public-access files in order to view the actual wage documents and to find comparators for the prevailing wage. (ECF No. 16-2, PageID.1091.) And Broadgate's argument that the complainant only sought the "actual wage" and not the prevailing wage is equally unavailing. If the actual wage was less than the prevailing wage, Broadgate would still be in violation of the INA. And in any case, the complainant checked this box: "Employer failed to pay

nonimmigrant worker(s) the higher of the prevailing or actual wage." (ECF No. 16-9, PageID.1495.) So the Court is not persuaded that an aggrieved party's potential ignorance of his rights should somehow cabin the Department's investigation.

Broadgate next misreads *Greater Missouri Med. Pro-Care Providers, Inc. v. Perez*. The court in that case addressed a totally different scenario where the Secretary claimed that "just one allegation by an aggrieved party automatically justifies a comprehensive investigation of the employer as a whole[.]" 812 F.3d 1132, 1137 (8th Cir. 2015). But here, as the Board recognized, the investigator uncovered Broadgate's failure to post notices in the course of investigating a wage complaint, which was permissible under *Greater Missouri*. (ECF No. 6-1, PageID.232.) In fact, *Greater Missouri* explicitly addressed what happened here: "our decision does not require the Secretary to ignore other potential violations it discovers in the course of a lawful investigation." *Id.* at 1140. And that court noted that "20 C.F.R. § 655.807 authorize[s] the Secretary to investigate certain types of alleged violations when the Secretary receives credible information about such violations from a reliable source, which could include information discovered in the course of a lawful . . . investigation." *Id.* And this conclusion is in keeping with the general statutory scheme: "the H-1B Program, which allows for an expedited application process—effectively barring [the Department] from reviewing [Applications] for more than facial completeness and accuracy—to ensure that employers can meet their employment needs, while enforcing compliance through more robust back-end investigations." *See Aleutian*, 975 F.3d at 235. And as a final point, knowing the wage

24

an H1-B Program employer is paying its employees is part of the rationale for posting the notices. So the concepts are related such that the investigation of one is not a fishing expedition into the other.

In sum, the Court finds that the Board's determination that the investigation was permissible in scope was supported by substantial evidence and was not arbitrary and capricious.

### C. Civil Monetary Penalties

The Secretary requested that "if the Court does not vacate [the Department's] order, it should grant judgment to [the Secretary] on its [Federal Debt Collection Procedures Act] claim." (ECF No. 16, PageID.1063.) This claim seeks judgment on the $59,752 civil monetary penalty that the Secretary demanded in a June 2022 letter. (ECF No. 14, PageID.442; ECF No. 14-1.) Broadgate perhaps concedes that it would owe the debt if the order was not vacated, as it did not address the Secretary's counterclaim in its briefing. (*See* ECF Nos. 18-1, 20.)

Although "issues not raised in response to [a] dispositive motion [are ordinarily] forfeited," *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019), the Court will consider if the Secretary satisfied his summary judgment burden.

The Federal Debt Collection Procedures Act "provides the exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1). It defines a judgment as "a judgment, order, or decree entered in favor of the United States in a court and arising from a civil . . . proceeding regarding a debt." § 3002(8). And it defines debt as "an amount that is owing to the United States

25

on account of a . . . penalty . . . or other source of indebtedness to the United States[.]" § 3002(3)(B). Finally, a FDCPA claim accrues when there is a "right to demand payment." *United States v. Dearborn Ref. Co.*, 777 F. Supp. 2d 1077, 1080 (E.D. Mich. 2011) (quoting *Crown Coat Front Co. v. United States*, 386 U.S. 503, 513–514 (1967)).

Here, the District Director demanded $59,752 from Broadgate in June 2022, noting that the penalties were "due immediately" following the final decision from the Secretary. (ECF No. 14-1, PageID.445.) The debt consisted of a $1,848 civil monetary penalty for Broadgate's failure to maintain complete payroll records, which it never disputed before the ALJ or the Board. (*See* ECF No. 6-1, PageID.312.) And Broadgate owes a $57,904 civil monetary penalty for its 14 willful violations of the Application notice requirement, which the Court upholds today. (ECF No. 6-1, PageID.226 n.18.) So the Secretary is entitled to recover a judgment on that past-due debt. *See United States v. Coluccio*, 19 F.3d 1115, 1117 (6th Cir. 1994).

And because Broadgate raises no argument against the collection of these penalties beyond the more general arguments already addressed, the Court finds that the "the evidence [of the debt] is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012). So the Court will grant the Secretary summary judgment on this claim.

## IV. Conclusion

For the forgoing reasons, Broadgate's motion for summary judgment is DENIED and the Secretary's motion for summary judgment is GRANTED.

Broadgate is liable for at least $59,752 in civil monetary penalties. The Secretary shall confer with Broadgate and then submit for consideration—on or before September 30, 2022 at noon—a proposed judgment that adequately sets forth any applicable interest calculations, the legal basis for the interest, and the date or dates from which any such calculations should run.

SO ORDERED.

Dated: September 27, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE