UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Broadgate, Inc.,**

   Plaintiff,       Civil No. 2:22-cv-11593

v.             Hon. Laurie J. Michelson
              Mag. Judge Kimberly G. Altman
**Secretary, Department of Labor**,

   Defendant.

---

# Defendant's Memorandum in Opposition to Plaintiff's Motion for Injunction Pending Appeal

---

## QUESTIONS PRESENTED

1. Should the Court deny the motion for an injunction pending appeal because Broadgate has failed to establish that it is likely to succeed on the merits of its appeal, or even that the appeal will present serious questions regarding the merits?

2. Should the Court deny the motion because Broadgate has failed to establish that it will be irreparably harmed or that any harm to it outweighs the harm to others and the public interest?

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................v

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................1

LEGAL STANDARD............................................................................................3

ARGUMENT ....................................................................................................5

I.     BROADGATE IS UNLIKELY TO SUCCEED ON THE MERITS,
AND HAS NOT PRESENTED "SERIOUS QUESTIONS"
REGARDING THE MERITS.............................................................6

     A.     Broadgate Is Unlikely to Prevail on Appeal Regarding the
Presumption of Regularity and Has Raised No Serious
Questions as to this Issue. ...........................................................7

     B.     Broadgate is Unlikely to Prevail on Appeal Regarding the
Scope of the Investigation and Fails to Raise a Serious Question
as to This Issue.........................................................................11

II.     BROADGATE FAILS TO DEMONSTRATE THAT ENFORCING
THE JUDGMENT FOR THE CIVIL MONETARY PENALTIES OR
THE DEBARMENT ORDER WILL RESULT IN IRREPARABLE
HARM OR THAT SUCH HARM OUTWEIGHS THE PUBLIC'S
INTEREST IN ENFORCEMENT. ....................................................14

     A.     Broadgate's Outdated Declaration Is Insufficient to Prove that It
Will Be Irreparably Harmed by the Judgment for Civil
Monetary Penalties or Debarment. ...........................................14

     B.     Broadgate's Scant and Speculative Assertions of Harm Are
Decidedly Outweighed by the Substantial Harm to the Public
Interest that Would Result from an Injunction. ........................19

CONCLUSION...................................................................................................23

CERTIFICATE OF SERVICE .............................................................................24

ii

## <u>INDEX OF AUTHORITIES</u>

**Statutes**

5 U.S.C. § 556 ................................................................................................7, 10

8 U.S.C. § 1182 ...............................................................................................2, 20

**Regulations**

20 C.F.R. § 655.806 ...............................................................................................2

20 C.F.R. § 655.820 ...............................................................................................2

20 C.F.R. § 655.840 ...............................................................................................2

**Rules**

Fed. R. Civ. P. 62(d) ........................................................................................3, 19

**Cases**

*Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006) ...............................................16

*Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220 (2d Cir. 2020) ....................22

*Corpus Christi Peoples' Baptist Church, Inc. v. Tex. Dep't of Human Res.*, 481 F.
Supp. 1101 (S.D. Tex. 1979) ..................................................................................5

*CSI Entertainment, Inc. v. Anthem Media Group, Inc.,* No. 15-CV-3508, 2016 WL
11263667 (E.D.N.Y. Dec. 30, 2016) ....................................................................16

*Gerhart v. Dep't of Health & Hum. Servs.*, No. 416CV00151RGECFB, 2016 WL
8839016 (S.D. Iowa Aug. 12, 2016) .....................................................................21

*Grutter v. Bollinger*, 137 F. Supp. 2d 874 (E.D. Mich. 2001) .................................4

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ...............................................................4

*Hunter v. FERC*, 527 F. Supp. 2d 9 (D.D.C. 2007)................................................22

*In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985)......................................5

*Interstate Safety & Serv. Co. v. City of Cleveland*, No. 1:11CV1181, 2011 WL
5873108 (N.D. Ohio Nov. 18, 2011)......................................................................21

*Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009)..................................................4, 19

*Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588 (6th Cir. 2014)..................................15

*Kirchdorfer v. McLaughlin*, No. C 88-0771-L(B), 1989 WL 80437 (W.D. Ky. Mar. 1, 1989), *aff'd sub nom. Kirchdorfer v. Sec'y, U.S. Dep't of Lab.*, 895 F.2d 1413 (6th Cir. 1990) ......................................................................................21

*Livingston Educ. Serv. Agency v. Becerra*, No. 22-CV-10127, 2022 WL 1073191 (E.D. Mich. Apr. 8, 2022) ................................................................4, 18

*Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010)................................................................14

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991)................................................................................. passim

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................20

*Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288 (6th Cir. 1987)................................................................................................14

*Skidmore v. Swift Co.*, 323 U.S. 134 (1944) ...........................................................13

*Universal Settlements, Int'l, Inc. v. Nat'l Viatical, Inc.*, No. 1:07-CV-1243, 2009 WL 528925 (W.D. Mich. Mar. 2, 2009) ..........................................................18

*Wisconsin Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669 (D.C. Cir. 1985) ..............................................................................................................14

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991)

## **INTRODUCTION**

Despite not yet having filed a notice of appeal, Plaintiff Broadgate, Inc. seeks to further delay the enforcement of a final order by the Department of Labor ("DOL") while it appeals the district court's summary judgment decision upholding that order. As to the merits, Broadgate's motion simply rehashes arguments that the Court firmly refuted based on settled law; those arguments fail to demonstrate a likelihood of success on the merits or even "serious questions" for appeal. Moreover, because Broadgate's assertions of irreparable harm are threadbare, speculative, and based on stale evidence, Broadgate fails to demonstrate that it will suffer irreparable harm that outweighs the public's interest in having DOL's order enforced. The Court should accordingly deny the requested relief.

## **BACKGROUND**

Given the Court's familiarity with this case, Defendant does not provide a full recitation of the facts here but instead highlights facts and procedural steps that are particularly relevant to the instant motion.

The enforcement matter in this case stems from 14 willful violations of the H-1B notice requirements that Broadgate committed between four and five years

ago.[1] In December 2018, DOL's Wage and Hour Division ("WHD") issued its

determination of these violations, and assessed civil monetary penalties ("CMPs")

and a two-year debarment of Broadgate from nonimmigrant and immigrant worker

programs. (ECF No. 6-1, PageID.307–312.) For nearly four years, Broadgate has

litigated the determination in administrative proceedings and in this Court, but it

has never disputed that it committed the violations and no longer disputes that it

did so willfully. The penalties and debarment were stayed for the duration of the

administrative litigation before a DOL administrative law judge ("ALJ") and

DOL's Administrative Review Board ("ARB"). *See* 20 C.F.R. §§ 655.820(a);

655.840(a).

Once DOL's decision became final and enforceable at the conclusion of the

administrative litigation phase, Broadgate challenged the DOL order in this Court

and moved for a stay pending judicial review. (ECF No. 1; ECF No. 5.) To resolve

this motion, DOL and United States Citizenship and Immigration Services

("USCIS") agreed to a short-term stay of the effects of the final DOL order so that

the Court could adjudicate the case on its merits before October 1, 2022, the date

on which Broadgate's nine pending H-1B petitions sought to authorize

---

[1] The administrative complaint was filed in February 2018, and the limitations
period in the statute and regulations limits actionable violations to those occurring
within the year preceding the complaint. *See* 8 U.S.C. § 1182(n)(2)(A); 20 C.F.R.
§ 655.806(a)(5).

employment for their beneficiaries. (ECF No. 13.) Thus, from the date of WHD's original determination in December 2018 until this Court issued its decision upholding DOL's final order on September 27, 2022 (ECF No. 21), Broadgate continued to enjoy the benefits of employing H-1B workers.

Broadgate has not, to date, filed a notice of appeal of this Court's decision. Nonetheless, Broadgate has filed a motion under Fed. R. Civ. P. 62(d) requesting that the Court enjoin the underlying DOL order while Broadgate's (as-yet-hypothetical) appeal is pending. (ECF No. 23.) In doing so, Broadgate seeks to extend its period of impunity even further. Broadgate did not attach any declaration or other evidence in support of its motion. Rather, to support its assertion that it will suffer irreparable harm absent an injunction pending appeal, it referred back to the cursory declaration it filed on July 14, 2022, with the original stay motion accompanying its complaint. (*See* ECF No. 23, PageID.1943–1944 (citing ECF No. 1-2, PageID.187–188)).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 62(d), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). In deciding a motion

for an injunction pending appeal, courts consider essentially the same factors applied to a motion for a preliminary injunction or a motion for a stay pending appeal under Federal Rule of Appellate Procedure 8(a). *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Livingston Educ. Serv. Agency v. Becerra*, No. 22-CV-10127, 2022 WL 1073191, at *1 (E.D. Mich. Apr. 8, 2022). These factors are: (1) the likelihood that the movant will succeed on the merits of the appeal; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will substantially harm others; and (4) whether the public interest will be advanced by issuing the injunction. *Griepentrog*, 945 F.2d at 153*; Grutter v. Bollinger*, 137 F. Supp. 2d 874, 875 (E.D. Mich. 2001); *see also Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (discussing factors for a preliminary injunction).

However, at least with respect to success on the merits, the burden for a party seeking relief pending appeal is higher than for a party seeking a preliminary injunction. *Griepentrog*, 945 F.2d at 153. As the Sixth Circuit has observed, because "a motion for a stay [or injunction] pending appeal is generally made after the district court has considered fully the merits of the underlying action and issued judgment . . . a movant seeking a stay [or injunction] pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a

4

likelihood of success on the merits. In essence, *a party seeking a stay [or injunction pending appeal] must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal*." *Id.* (emphasis added).

An exception to this "ordinar[y]" rule exists if a movant shows "irreparable harm that decidedly outweighs any potential harm to the defendant." *Id.* at 153–154. In such circumstances, the movant need not necessarily demonstrate a "high probability of success on the merits." *Id.* But even where the balance of harms tips strongly in the movant's favor, the movant must "demonstrate more than the mere 'possibility' of success on the merits" and must "show, at a minimum, 'serious questions going to the merits.'" *Id.* (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

## **ARGUMENT**

As an initial matter, it is not even clear that Broadgate's motion is properly before the Court. As noted above, Broadgate has not filed a notice of appeal, and injunctive relief under Rule 62(d) is only available "[w]hile an appeal is pending." *See Corpus Christi Peoples' Baptist Church, Inc. v. Tex. Dep't of Human Res.*, 481 F. Supp. 1101, 1111–12 (S.D. Tex. 1979) (noting that prior version of rule permitting injunctive relief "(w)hen an appeal is taken" likely required party to file notice of appeal, but ultimately considering, and denying, motion for injunction for prudential reasons).

Assuming, however, that Broadgate's motion for an injunction pending appeal is ripe for consideration despite the absence of an actual appeal, the motion should be denied. Broadgate has failed to demonstrate a likelihood of success on the merits of its appeal or even "serious questions" regarding the merits. Moreover, Broadgate has provided only vague, speculative, and dated assertions regarding the harms it will allegedly suffer if an injunction is not granted; these are insufficient to constitute irreparable harm. Finally, a delay would harm others and be contrary to the public interest, as it would undermine enforcement of federal immigration law and force employers who comply with the law to compete with Broadgate on an uneven playing field.

## I.   BROADGATE IS UNLIKELY TO SUCCEED ON THE MERITS, AND HAS NOT PRESENTED "SERIOUS QUESTIONS" REGARDING THE MERITS.

Neither of Broadgate's legal arguments regarding the merits of this Court's decision is likely to succeed on appeal. That is all the Court need conclude to deny Broadgate's motion, since, as discussed below in section II, Broadgate has utterly failed to demonstrate "irreparable harm that decidedly outweighs any potential harm to the defendant." *Griepentrog*, 945 F.2d at 153–54. However, even if the Court were to find that the balance of hardships weighs heavily in Broadgate's favor, it should still deny an injunction pending appeal because Broadgate has failed to raise serious questions regarding the merits, either on its delegation

argument or on its investigative-scope argument.

    **A.**    **Broadgate Is Unlikely to Prevail on Appeal Regarding the Presumption of Regularity and Has Raised No Serious Questions as to this Issue.**

Broadgate continues to press its argument that the presumption of regularity conflicts with 5 U.S.C. § 556(d)'s placement of the "burden of proof," i.e., the burden of persuasion, on WHD during the administrative proceedings below. This contention has no likelihood of success on appeal and cannot be construed as a "serious question" on the merits.

As the Court observed, the presumption of regularity provides that "if a public officer takes an action, it is presumed that she had authority to take that action." (ECF No. 21, PageID.1906.) The Court properly noted that this presumption "breaks no new ground." (*Id.*) The Court proceeded to explain that the presumption of regularity does not conflict with § 556(d) because even assuming, as Broadgate argues, that the District Director's authority to issue the determination letter was an "express element" of a "rule or order" subject to § 556(d), the presumption of regularity relieves the government of the burden of producing evidence of authority but does not affect the burden of persuasion on that issue. (*Id.* PageID.1910–1911.)

Despite the Court's clear articulation of these concepts, Broadgate continues to confuse matters by appearing to insist that a party cannot carry its burden of

persuasion on a fact without offering direct evidence of that fact, i.e., meeting the burden of production without the use of any presumptions. (ECF No. 23, PageID.1937–1940.) As the Court has already observed, this contention entirely ignores the longstanding function of evidentiary presumptions in our legal system: that the existence of a certain "basic" fact, when combined with common experience and ordinary reasoning, permits a factfinder to presume the existence of a different "ultimate" fact. (ECF No. 21, PageID.1911.) Because the presumed basic fact is *itself* (if unrebutted) persuasive evidence of the ultimate fact, the party with the burden of persuasion is relieved from producing direct evidence of the ultimate fact unless the opposing party provides evidence sufficient to rebut the presumption (which, as the Court has recognized, Broadgate did not do here). *See* 2 McCormick on Evid. § 342 (8th ed.) ("[A] presumption is a standardized practice, under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts.") In this case, the fact that the District Director issued the determination letter (basic fact) relieved WHD of producing evidence that she was authorized to do so (ultimate fact).

Broadgate's confusion of the issues carries through its assertion that *Greenwich Collieries* "indicate[s] that the party opposing the order does not have a burden of production until the party with the burden of persuasion establishes a prima facie case." (ECF No. 23, PageID.1937.) This counterintuitive argument—

that a party cannot be relieved of the burden of production without first meeting it—would entirely negate the purpose of presumptions and relies on the same misunderstandings discussed above. A complete reading of *Greenwich Collieries* shows that the Supreme Court specifically distinguished the terms "burden of establishing a prima facie case," "burden of production," and "burden of going forward with evidence"—all of which § 556(d) permits shifting to the non-proponent of a rule or order—from the "burden of proof" or "the burden of persuasion," which § 556(d) does not permit shifting. *Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 274 (1994). As the Court concluded, the ARB's use of the presumption of regularity in this case fit into the former rather than the latter category. (ECF No. 21, PageID.1909–1910.) *See* 2 McCormick on Evid. § 342 (8th ed.) ("[A]ssume that a party having the burden of producing evidence of fact A, introduces proof of fact B. The judge, using ordinary reasoning, may determine that fact A might reasonably be inferred from fact B, and therefore that the party has satisfied its burden, or as sometimes put by the courts, has made out a 'prima facie' case.")

Broadgate's reasoning, on the other hand, would effectively bar the use of any presumptions in APA proceedings. The absurdity of this position—one that the Sixth Circuit has squarely rejected (*see* ECF No. 16, PageID.1051)—is reflected in Broadgate's apparent contention that the APA prohibits, in *civil* administrative

proceedings, evidentiary presumptions that are permitted in *criminal* cases, where the prosecution bears a much heavier burden and where the rights of the "non-proponent" are more closely guarded. (*See* ECF No. 23, PageID.1237 (seeking to distinguish the permissibility of evidentiary presumptions, even those regarding "ultimate" and "elemental" facts, discussed in *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005), on the grounds that "*Miskel* was a criminal case . . . and so not subject to 5 U.S.C. § 556(d)").)

In addition, Broadgate wrongly assumes that it will prevail on its contention that the District Director's authority to issue determination letters act was an "express element" of WHD's action and therefore subject to § 556(d)'s burden-of-persuasion requirement. (ECF No. 23, PageID.1935–1937.) Although the Court may have assumed this for the purpose of deciding the summary judgment motions (*see* ECF No. 21, PageID.1911 ("*even assuming* the District Director's authority was an 'express element' of the enforcement action . . .") (emphasis added)), it did not decide this question. Broadgate has still failed to cite any authority to support such a proposition, and the ARB correctly concluded that § 556(d)'s requirement that the proponent of a rule or order must bear the burden of proof applies only to elements of a substantive claim, which the District Director's authority was not. (*See* ECF No. 6-1, PageID.324; ECF No. 16, PageID.1050–1052.)

Ultimately, Broadgate fails to establish that the ARB's application of the

presumption of regularity presents a "serious question" on appeal.

**B.    Broadgate is Unlikely to Prevail on Appeal Regarding the Scope of the Investigation and Fails to Raise a Serious Question as to This Issue.**

Broadgate also takes issue with the Court's conclusion that Kranthi Mogireddy's wage complaint provided reasonable cause for WHD to request public access files related to other employees, which in turn led WHD to discover Broadgate's widespread and willful notice violations. (ECF No. 23, PageID.1940–1943.) Specifically, Broadgate argues that because Mogireddy asserted to WHD in the narrative portion of his complaint that he was not paid the wage he was promised, his complaint did not give WHD reasonable cause to investigate whether he was paid the greater of the prevailing or actual wage—the relevant statutory and regulatory requirement—even though Mogireddy checked a box in his complaint alleging precisely that. (ECF No. 16-9, PageID.1496–1497.)

At the outset, the authorities on which Broadgate relies are inapposite, because Broadgate conflates the "reasonable cause" standard applicable to WHD's initiation of an investigation with the "substantial evidence" required to sustain a final administrative decision on judicial review. Broadgate cites several cases—all of which concern the quantum of evidence necessary to support administrative denials of social security disability benefits—that it asserts reflect the proposition that "[a] check in a box, unsupported by further explanation or evidence, is not

substantial evidence." (ECF No 23, PageID.1941–1942.) While that proposition may well be correct, neither WHD nor the Secretary has ever contended that the check-box in Mogireddy's complaint, by itself, constituted substantial evidence that Broadgate committed wage violations. Rather, the ARB reasonably concluded that this allegation, together with the additional narrative information Mogireddy provided, constituted *reasonable cause* for WHD to *initiate an investigation* into whether Broadgate had failed to pay him the greater of the prevailing or actual wage—an inquiry that, as the Secretary has previously explained, necessitated a review of information regarding potential wage comparators since the "actual wage" is defined as the wage paid to the employer's similar workers. (*See* ECF No. 16, PageID.1059–1060; ECF No. 19, PageID.1865.)

The statute and regulations do not define the term "reasonable cause," and certainly did not require the ARB or WHD to define it as "substantial evidence"— a standard that would make little sense to apply before an investigation has even begun.

Moreover, application of a heightened standard to WHD's initial review of H-1B administrative complainants would be counterproductive and impractical given the circumstances under which such complaints are brought. The aggrieved H-1B workers who submit administrative complaints to WHD are citizens of foreign countries working temporarily in the United States. The vast majority of

such complainants are not represented by counsel. They cannot be expected to be familiar with the precise elements of violations of federal immigration and labor law and how to articulate the facts of their cases in a manner that neatly fits those elements. They may not even know what the prevailing or actual wage for their position is. Often, all they will know or suspect—as was the case with Mogireddy—is that they were not paid properly or on time. Thus, as Mogireddy did, complainants check the box describing the legal elements of the violation(s) that most closely correspond to the facts as they understand them. It is then up to WHD to use its judgment and expertise to determine whether the complaint in totality—the legal allegations plus any narrative provided—presents *reasonable cause*—not proof beyond a reasonable doubt, not a preponderance of the evidence, not substantial evidence—to *begin* an investigation. WHD and the ARB approach this question with "a body of experience and informed judgment to which courts . . . may properly resort for guidance." *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). Ultimately, there is no serious question that the ARB did not act arbitrarily, capriciously, or contrary to law in concluding that Mogireddy's complaint provided WHD with reasonable cause to investigate whether Broadgate failed to pay him the greater of the actual or prevailing wage, which, in turn, led WHD to reasonably request the public access files that showed the notice violations.

II.   **BROADGATE FAILS TO DEMONSTRATE THAT ENFORCING THE JUDGMENT FOR THE CIVIL MONETARY PENALTIES OR THE DEBARMENT ORDER WILL RESULT IN IRREPARABLE HARM OR THAT SUCH HARM OUTWEIGHS THE PUBLIC'S INTEREST IN ENFORCEMENT.**

    A.   **Broadgate's Outdated Declaration Is Insufficient to Prove that It Will Be Irreparably Harmed by the Judgment for Civil Monetary Penalties or Debarment.**

Plaintiffs seeking an injunction must show that they are in danger of harm that is "both certain and immediate, rather than speculative or theoretical." *Griepentrog*, 945 F.2d at 154 (citing *Wisconsin Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). In assessing whether the alleged harm is irreparable, the Sixth Circuit instructs that courts consider "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Id.* at 154 (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). The existence of other forms of compensatory or corrective relief weight against a finding of irreparable harm. *Id*. Where movants have failed to take preparatory or corrective action in order to mitigate potential harm, courts may deny an injunction on the grounds that harm is self-imposed. *See Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 104 (6th Cir. 2010); *Celebrezze*, 812 F.2d at 292.

Here, Broadgate alleges that irreparable harm will arise in part from "denial

of nine petitions pending with USCIS under Section 214(c)." (ECF No. 23, PageID.1943–1944.) Broadgate further claims that these denials will result in a loss of at least $90,000 in profits as well as a loss of client good will and hindrance of future employee recruiting. (*Id*.) As evidence for these claims, Broadgate offers only a one-and-a-half-page declaration of Kashi Kotha, Director of Broadgate, which was executed on July 13, 2022, in support of the preliminary injunction motion that Broadgate filed with its complaint. (*Id*. (citing ECF No. 1-2, PageID.187–188).) In that declaration, Kotha claimed that Broadgate earns "a net profit of at least $10,000 per year for each employee whom it contracts to one of its clients," that clients will be "reluctant" to contract with Broadgate in the future if Broadgate cannot "follow through on commitments which [it has] have made to deliver services," and that "foreign nationals" will be "reluctant to work with a company which it is perceived is in disfavor with the government." (*Id*.)

This lone declaration is grossly insufficient to show irreparable harm. First, "a mere loss of profits generally will not qualify as irreparable harm." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 599 (6th Cir. 2014). Second, even if, as Broadgate asserts, harm due to lost profits would be irreparable because the profits would not be recoverable, Kotha's vague assertions provide absolutely no information that would enable the Court to evaluate the substantiality of the injury or the likelihood of its occurrence, and are wholly inadequate as proof. *See*

*Griepentrog*, 945 F.2d at 154.

Kotha's declaration, including its estimates of lost corporate income, is both speculative and devoid of specific and necessary details. *See Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (to show irreparable harm, movants must show "they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated"). For example, Broadgate has provided no documentation to support Kotha's assertions regarding the profits he claims Broadgate typically earns from its contracts; in the absence of supporting documentation such as the contracts themselves, such assertions are hearsay and unreliable. *See CSI Entertainment, Inc. v. Anthem Media Group, Inc.,* No. 15-CV-3508, 2016 WL 11263667, at *8 (E.D.N.Y. Dec. 30, 2016) (speculative and hearsay affidavit and testimony regarding potential economic loss, without any "hard evidence" such as business records, was insufficient to establish irreparable harm). Nor has Broadgate provided any information as to the relative size of the alleged $90,000 loss compared to Broadgate's overall operations—a fact necessary to determine whether the harm would be comparatively substantial.

Just as importantly, the declaration is three months old and is not informative as to the harms that might or might not result from the denial of an injunction today. Broadgate is a staffing firm that enters into service agreements with intermediary vendors, who in turn contract with the end-clients whose sites

are where Broadgate's employees actually work and provide information technology services. (ECF No. 16-2, PageID.1136–1137; ECF No. 16-3, PageID.1224–1225.) Presumably, both these intermediary vendors and the ultimate end-clients originally anticipated, and perhaps believed as late as July 2022, that the H-1B workers named in Kotha's declaration would have their petitions granted and would be cleared to work at their intended locations by October 1, 2022. That date, however, has passed, and Broadgate has provided no information as to what, if anything, Broadgate, the intermediary vendors, the end-clients, or the workers themselves have done in the meantime now that Broadgate's petitions have not been granted by the expected date. For instance, have any of the workers identified in the petitions changed their plans to work in the United States for personal reasons, or chosen to pursue opportunities with other employers? Have either the intermediary vendors or the end-clients moved on and found substitute workers from their own employees or from other staffing firms? Developments like these would render moot Broadgate's request for an injunction to prevent future financial harms associated with these pending petitions.

Likewise, Kotha's outdated declaration cannot speak to whether Broadgate has attempted, or just as importantly *could have* attempted or *could still now* attempt, to mitigate any alleged harms of the debarment, such as by facilitating connections between their clients and other firms or potentially by fulfilling its

staffing contracts with employees who are not immigrant or nonimmigrant workers and therefore are unaffected by the debarment. *See Livingston Educ. Serv. Agency*, 2022 WL 1073191, at *3 (finding "self-imposed injury" and a lack of irreparable harm where, for months, employer made no efforts were made to "minimize [its] losses" by hiring alternative staff to replace those subject to dismissal under mandatory vaccination policy) (citing *Griepentrog*, 945 F.2d at 154). All of these facts are relevant to the likelihood, imminence, and magnitude, and cause of any potential harm related to the debarment, and Kotha's three-month-old declaration does not and cannot speak to them.

Kotha's vague conjectures about clients' and recruits' "reluctance"—not even refusal—to work with Broadgate fare no better. By their terms, these potential consequences reflect inconvenience and discomfort, not a showing of substantial harm sufficient to justify an injunction. *Griepentrog*, 945 F.2d at 154 (holding that courts should consider whether harm is "substantial"); *Universal Settlements, Int'l, Inc. v. Nat'l Viatical, Inc.*, No. 1:07-CV-1243, 2009 WL 528925, at *1 (W.D. Mich. Mar. 2, 2009) (finding plaintiff's "evidence of 'possible irreparable injury' based on a 'possible loss of reputation' if it is not able to complete performance of its contract," to be "at best an extremely weak showing of irreparable harm.")

Finally, Broadgate also alleges it will suffer harm because, if the Secretary

collects on this Court's monetary judgment for CMPs, and then Broadgate prevails upon appeal, Broadgate may not be able to recover the amounts collected due to sovereign immunity. (ECF No. 23, PageID.1943–1945.) This argument overlooks a much more obvious and widely-accepted means of preserving both Broadgate's and the government's interests regarding the CMPs during the pendency of appeal—the posting of a bond in exchange for a stay. *See* Fed. R. Civ. P. 62(b). Broadgate's unexplained failure or unwillingness to seek a stay by posting a bond disqualifies the monetary portion of the judgment as a basis for a finding of irreparable harm. *See Griepentrog*, 945 F.2d at 154 (other forms of available relief weigh heavily against finding of irreparable harm). And even if the $60,000 in CMPs were unrecoverable once paid (which it is not, since Broadgate can simply post a bond), as with the alleged lost profits, Broadgate has provided no evidence as to the magnitude of a $60,000 penalty relative to its overall business to enable the Court to evaluate whether such a loss would be "substantial."

### B.    Broadgate's Scant and Speculative Assertions of Harm Are Decidedly Outweighed by the Substantial Harm to the Public Interest that Would Result from an Injunction.

Even if Broadgate had adequately demonstrated that it will be irreparably harmed in the absence of an injunction, this Court must weigh such harms against the prospect that a stay would harm others and the public interest. *Jones*, 569 F.3d at 277–78 (considering the same factors for purposes of preliminary injunction).

These two factors merge where, as here, the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, delaying the effects of the debarment any further would undermine the enforcement of the H-1B labor requirements and would subject employers who abide by these requirements to an uneven playing field by allowing Broadgate to continue participating in the program without suffering consequences for its willful violations.

It is undisputed that Broadgate committed multiple violations of the H-1B program. Specifically, Broadgate is not challenging DOL's finding that on at least 14 occasions, it willfully failed to comply with the posting requirements of the H-1B program. (ECF No. 17-1, PageID.1655.)[2] And with good reason—the record shows that Broadgate knowingly chose not to comply with the actual-worksite posting requirements on numerous occasions even after "repeated[]" warnings from its own attorneys. (ECF No. 6-1, PageID.306; ECF No. 16-4, PageID.1436 ¶ 15; ECF No. 16-7, PageID.1473) In establishing a 2-year debarment as the required remedy for willful notice violations, *see* 8 U.S.C. § 1182(n)(2)(C)(ii)(II), Congress made clear that employers such as Broadgate that commit such violations should not be permitted to sponsor and employ nonimmigrant workers. Enabling

---

[2] It also has not disputed that it severely underpaid at Mogireddy until he filed a complaint with WHD. (ECF No. 6-1, PageID.225 n. 9 (noting the back wage determination of $31,696.80 owed to the H-1B worker complainant).)

Broadgate to continue avoiding this mandatory sanction while it pursues an appeal grounded entirely in alleged procedural deficiencies would be contrary to that intent.

Additionally, if Broadgate is permitted to continue participating in the H-1B program, similar businesses would be harmed by having to compete with a company that has previously flouted the law. *Interstate Safety & Serv. Co. v. City of Cleveland*, No. 1:11CV1181, 2011 WL 5873108, at *2 (N.D. Ohio Nov. 18, 2011) (finding harm to the public where delay of debarment would force companies to bid against a contractor that has in the past ignored the requirements placed upon it by city government). Likewise, unjustified delay of debarment dilutes the efficacy of the government's H-1B enforcement framework. *See Kirchdorfer v. McLaughlin*, No. C 88-0771-L(B), 1989 WL 80437, at *3–4 (W.D. Ky. Mar. 1, 1989), *aff'd sub nom. Kirchdorfer v. Sec'y, U.S. Dep't of Lab.*, 895 F.2d 1413 (6th Cir. 1990) ("To relieve a violator of the penalty of debarment where the sanction otherwise appears to be warranted completely undermines the intent of Congress that the sanction be strictly applied, eliminates the deterrent effect that possible debarment has on other contractors, and places contractors who comply with the [Service Contract] Act's wage and benefits provisions at a competitive disadvantage."); *see also Gerhart v. Dep't of Health & Hum. Servs.*, No. 416CV00151RGECFB, 2016 WL 8839016, at *9 (S.D. Iowa Aug. 12, 2016)

("There is inherent harm to the agency in preventing the agency from enforcing regulations Congress found in the public interest."); *Hunter v. FERC*, 527 F. Supp. 2d 9, 18 (D.D.C. 2007) (finding that the public interest in avoiding harm to an agency's enforcement authority weighed against granting a preliminary injunction).

Such consequences would be particularly harmful in the H-1B program. As the Court observed in its opinion, the H-1B program "allows for an expedited application process—effectively barring [the Department] from reviewing [Applications] for more than facial completeness and accuracy—to ensure that employers can meet their employment needs, while enforcing compliance through more robust back-end investigations." (ECF No. 21, PageID.1917–18 (quoting *Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 235 (2d Cir. 2020)). Congress's decision to subject the application process to minimal scrutiny up front presupposes that the vast majority of H-1B employers will be truthful in the attestations in their Labor Condition Applications and will comply with the statutory and regulatory requirements. Thus, when a company, like Broadgate, not only fails to comply with these requirements but does so willfully and substantially, it is especially critical that the sanctions resulting from a "robust back-end investigation" not be unduly delayed or watered down to ensure that the enforcement scheme appropriately reflects the balance envisioned by Congress—

one that does not presume all employers potentially guilty of wrongdoing but holds to account those who are found to have committed serious violations.

Here, Broadgate has continued to sponsor and employ H-1B workers without consequence despite willful violations it committed five years ago that were the subject of an administrative determination initially issued nearly four years ago. That determination, which included the imposition of civil penalties and a two-year debarment, became final agency action in May 2022, and has now been upheld by this Court. The public interest heavily weighs against any further delay of these sanctions, particularly given Broadgate's failure to demonstrate either irreparable harm or a likelihood of success (or even serious questions) on the merits.

## CONCLUSION

For the foregoing reasons, the Court should deny Broadgate's motion for an injunction pending appeal.

Respectfully Submitted,

**Dawn N. Ison**
United States Attorney

*/s/ Christopher J. Doyle*
**Christopher J. Doyle** (P79376)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9595
christopher.doyle@usdoj.gov

Dated: October 13, 2022

23

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 13, 2022, I electronically filed the foregoing

and all attached exhibits with the Clerk of the Court using the ECF system, which

resulted in service on counsel for the other parties to this case.

 /s/ Christopher J. Doyle
**Christopher J. Doyle** (P79376)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9595
christopher.doyle@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Broadgate, Inc., | |
| Plaintiff, | Case No. 22-cv-11593 |
| | Honorable Laurie J. Michelson |
| v. | |
| Secretary, Department of Labor, | |
| Defendant. | |

## BRIEF FORMAT CERTIFICATION FORM

I, Christopher J. Doyle, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the [main] brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

/s/ Christopher J. Doyle
Dated: October 13, 2022